Mr. Combs is asking that this court continue to find he did not possess the rifle, overturn the district court's re-sentencing and reduce his base offense level from a level 20 down to a level 14. Judge O'Connor We remanded it to the district court to do something, i.e. to decide by preponderance of the evidence whether there was possession. So how can we just do that ourselves? Mr. Combs That's correct, Your Honor. It was remanded to the district court and upon re-sentencing the district court looked at the determination that this court had made regarding the possession and immediately found that this court must have focused only on constructive possession and therefore did not rule regarding actual possession. And based on that alone, found that one fingerprint was enough to show that Mr. Combs had possessed the rifle. Judge O'Connor All right, so suppose we thought that was wrong, then what happens next? Mr. Combs Well, my recommendation would be to, if he did not in fact possess the weapon, to remand it for a limited purpose of demonstrating that the guidelines that he was originally sentenced under, which was the base offense level 21 under the 2K2.1A4B, indicating that it was a high-capacity weapon which he no longer possessed, that he should be sentenced under the guidelines of level 14. Judge O'Connor Well, wait a minute. I mean, do we decide that he no longer possessed it or do we remand it again and say, you know, we actually knew what we were doing and we didn't ignore actual possession, but we did decide that whatever we were deciding concerned beyond a reasonable doubt verdict and you still have to decide by a preponderance of the evidence whether he possessed the rifle. Mr. Combs Well, Your Honor, at resentencing and before resentencing, the government had opportunities to present any sort of evidence and they failed to do that. They failed to take several bites at the apple, quite frankly. Judge O'Connor Well, Mr. Mann, in addition to the fingerprint, didn't the judge also rely on the testimony of Ms. Haburn that she saw Mr. Combs actually handling the weapon? So it was more than just a mere touching, or at least he could so infer, yes? Mr. Mann Well, yes, Your Honor. I think that was discussed in the first appeal by this court, indicating that he picked up the weapon to look at it. In fact, the government's own witness indicated that the only fingerprint that was on there from Mr. Combs clearly indicated not that he was handling the weapon, but merely looking at the weapon. And based on that... Judge O'Connor I don't know how a fingerprint could tell you if someone was looking at a weapon as opposed to handling it. I think the fingerprint evidence was introduced to corroborate Ms. Haburn's testimony. I don't think there's any dispute on your part that, in fact, your client did hold the weapon, right? Mr. Mann That is correct. Judge O'Connor He testified at trial that Ms. Haburn was lying on that score, right? Mr. Mann No, and I think everybody is to assume that Ms. Haburn's testimony, that he touched it, but I think it's more telling that, you know, what kind of touch was it? Judge O'Connor Not that he touched it, though. It's that she testified that he held it, maybe for a moment or two, and then handed it back. Mr. Mann He looked at it. He held it. Judge O'Connor Right. I mean, he didn't hold it where he put his hand on the trigger and aim it or anything to that effect. He looked at it as if someone was handing someone else, you know, a paper to look at. You touch it, you look at it, and you hand it back. Mr. Mann So the only question, this is not a weight of the evidence question, it's a legal sufficiency question, right? Whether that's sufficient to constitute possession in the sense that the law defines it, right? Judge O'Connor Yes, Your Honor. Mr. Mann So why don't you address the many circuit court decisions that have gone the other way on this precise issue? Judge O'Connor Well, first of all, I think the law of the case is controlling in this case. Under Jeffries, this court found that there was insufficient evidence to demonstrate that Mr. Combs had possessed the weapon. And the insufficiency is that any reasonable fact finder could not find that there was a basis for him to possess the weapon. Judge O'Connor We must have held it as a matter of clear argument is that we must have found that it isn't true that as a matter of law, holding it momentarily  Mr. Mann Correct, Your Honor. And in... Judge O'Connor In terms of the other circuits, there, well, there were two pieces I'm interested in. One is, is there a G.C. circuit case that says that it isn't enough? Are all the other circuits the other way from your argument or not? Mr. Mann Quite frankly, I haven't found a specific case that I thought would address our point. Now, the district court obviously relied on Soto. Judge O'Connor No, no, I'm talking about the one from the other circuits. There's Lane and there's a number of others. Mr. Mann Right. Quite frankly, I think those go, those don't demonstrate as much as what I would say. In all the cases that I looked at, every one of them that talks about some sort of fingerprint that demonstrates... Judge O'Connor I'm talking about the fingerprint now. Mr. Mann Okay. Judge O'Connor Okay, let's put the fingerprint aside. Mr. Mann Okay, I'm sorry. I'm talking about what Judge Watford was talking about, the evidence that he picked up a gun and held it for some, let's say for 10 seconds or for one minute or whatever. Looked at it, didn't have any apparent, I mean, let's assume that there was no evidence that he had any right to do anything with it other than that. He could have, it was his girlfriend's weapon, if he had walked out with it or tried to do anything else with it, she had control over it, not him. Judge O'Connor Right. I believe that all the cases that talk about that sort of possession talks about a moment in time when the weapon was found near him in proximity to... Judge O'Connor No, no, no. I mean, the Lane case in particular is pretty right on, except for the fact that he actually bought the weapon at that point, paid for it, which seems to me to be a significant difference. But they essentially held, they said, we hold, that picking up the weapon and holding it is possession, a distinguished possession of guns from possession of drugs, as to which that is not true. Judge O'Connor Right. Mr. Mann, how do you define what you say should be our definition of possession? Judge O'Connor Well, I believe, as this court had stated previously, knowledge alone is not enough to demonstrate possession. And if we are saying that one moment in time... Mr. Mann No, no, no. Please answer my question. What do you say should be the definition of possession? Judge O'Connor I think it should be actual custody, if we're talking about actual physical possession. Mr. Mann The dictionary says dominion or control, yes? Judge O'Connor Well, absolutely. Dominion or control. I think that is definitely part of the definition. For example, I'm level with the car Tesla. If I went and looked at a car that was sitting on the street and put my hands up to it and looked inside the window and my fingerprint ended on it, would that mean that I possessed  Because my fingerprint... Judge O'Connor Suppose you went for a test drive. Mr. Mann What's that? Judge O'Connor Suppose you went for a test drive. Mr. Mann Well, I think if I went for a test drive, there would be a little more of an argument saying that at that moment in time, I very well may have possessed that car. But I'm sure that the dealership would be very wary of me saying that I possessed the car at that time. In oral argument during the first appeal, it was argued that if someone showed a gold necklace and someone looked at it for a brief moment, oh, that's an interesting necklace, and then let go, does that mean that person possessed it at that brief moment? I think it's quite clear that that would take this argument of possession to the ridiculous. It goes above and beyond what we ever wanted to. Now, I think possession is one argument, but I think also looking how the district court failed to focus in on the guideline commentary about what an actual high-capacity weapon is... Judge O'Connor I gather the government's going to argue that you should look at the pictures and know. In fact, I don't know anything about guns, so if I look at the picture, I don't know, but should I know? Mr. Mann No, you should not, because we are a court of evidence and a picture alone is not enough. I look at that picture, it looks like some sort of magazine, but I don't know if there is a screw through it that can't allow it to accept more than 15 bullets in it at one time. I have no idea. That's why it is the government's burden to be able to demonstrate that. And in addition to that, the guidelines also talk about at the time of the offense. So now we are talking about space and time. At the time of the offense, was it able to accept and did it have near it this high-capacity magazine? Judge O'Connor I gather the government is also going to claim that you waived that argument. Did you argue in the first go-round? Mr. Mann I don't believe we waived that argument. And I think that's quite clear in the first appeal. I believe that there was a confusion as to under what subsection of the guidelines it was. When asked on the first appeal and oral argument, the government had indicated that he was sentenced under that level 20 because of his prior violent convictions. Now, we know that that case law has obviously overturned that aspect of it for Nevada law regarding burglaries. But I don't believe that argument was waived. In addition, even if it was, this was a resentencing. And upon resentencing, you look at guideline issues and you look to see if the guidelines apply. It would be a failure of judicial economy if the guidelines didn't really apply, but because he was resentencing that we had to ignore it because he didn't argue it the first time. Because there's a lot of different factors. Judge O'Connor Right out of your time, I'll give you some time in rebuttal. Thank you very much. Adam Flake Good morning. May it please the court. Adam Flake for the United States. With respect to the possession issue. Judge O'Connor Maybe you can start with the law of the case argument that we've heard from opposing counsel. Adam Flake Yes, Your Honor. I think that the law of the case argument actually kind of begs the question in this case. Because if it's, I mean, if that is ultimately what the court decided, then yes, it is the law of the case. Judge O'Connor When the government was here the last time trying to defend the conviction, what was the theory of possession that the government        Judge O'Connor Both. Judge O'Connor Both. Judge O'Connor Both. Judge O'Connor Both. Judge O'Connor I'm not sure. I don't remember. I'm hoping you do. Adam Flake Both, Your Honor. I mean, we certainly didn't pigeonhole ourselves into. Judge O'Connor All right. And to me, I mean, unless you think we're exceedingly dense, for the district court to say that, you know, we were just confused and we were only deciding constructive and not actual possession. If that were true, we never should have overturned that aspect of the conviction at all, right? Adam Flake Your Honor, I certainly don't think the court is dense. I think the district court judge was trying to read the court's opinion into more detail in such a way that he could determine the facts as he found them, whether or not they constituted actual possession. And having found a fingerprint on the weapon and – Judge O'Connor Are you defending that reading of Soto? Adam Flake Excuse me? Judge O'Connor Are you defending that aspect of his finding? Adam Flake Your Honor, I think that Soto certainly supports the argument that a conviction – that a fingerprint can – Judge O'Connor Alone is sufficient. Adam Flake We never argued that alone was sufficient. Judge O'Connor That's what he held. Adam Flake He held that – he – well, the district court held – he said Soto says that a fingerprint alone is sufficient. In addition, in this case, Donna Hayborn testified that Combs held the weapon in his hands. That was the basis for the court's decision. So I don't think the court was – the district court was faced with the issue of whether we just had a fingerprint, whether that would cut it. He noted both things in reaching his point. Judge O'Connor Okay, but what I'm trying to figure out is that you're saying that you – you, the government – argued on the first appeal this actual possession theory that you're now resting the whole sentencing enhancement on, right? Adam Flake We did note in our – to my – I apologize, I didn't write the opening brief on the first appeal. But to my recollection, we did note the testimony that he held the weapon in his hands in our – in our brief. Judge O'Connor And did you try to defend the conviction, relying on all of these cases that you're now providing us? Adam Flake No. No, Your Honor. I don't believe we cited Johnson and Soto in our – Judge O'Connor If we, in fact, had been presented with that argument and had resolved it against the government in the way that your opponent is arguing, it does seem to be problematic for us now to sort of reopen that issue. But I frankly don't remember this issue being teed up in the way it is now on the first appeal. Adam Flake I agree, Your Honor. I don't think that this issue was as square – certainly not on the preponderance of the evidence standard. And I don't think that this issue of the brief possession was squarely presented. Judge O'Connor But it doesn't have anything to do with the weight. That's what I said to your opponent. This – what's before us now has nothing to do with the weight of the evidence in my mind because we have undisputed testimony from Ms. Habern as to what he did. The only question now is a legal one, which would have been the same question, right, that was presented the first go-round on the sufficiency of the evidence to support the conviction. So it's either – your position, I think, has to be that, well, maybe we made nods to actual possession last time, but we really didn't present the issue to you, the panel, in a way that caused you to resolve that issue adversely to the government. Justice Breyer That's correct, Your Honor. Judge Maldonado So let me – assuming, arguendo, that the issue of actual possession is before us now, how do you define possession? Justice Breyer Your Honor, it's having dominion and control. I would go – that there's got to be many cases, just to dispose of Soto for the minute, that where a mere fingerprint being present doesn't show dominion and control, and so there's no way we can read Soto as saying that's sufficient by itself, correct? Justice Breyer I'm not sure how many – I'm not sure that there are cases that say a fingerprint alone is not enough, but I'm saying that I don't believe that that issue is before this Court, because in addition to the fingerprint, we have the witness testimony saying that he held the weapon. So I don't – Judge Maldonado So if the question is, is holding a weapon, even for purposes that have nothing to do, arguendo, with exercising control over it, is that still, in your view, sufficient dominion to trigger the statute? Justice Breyer Your Honor, I'm not sure how you hold something in your hands without controlling it, unless you don't have control over it. Judge Maldonado Supposing, for the sake of argument, he picked it up by the barrel, he would meaningfully have control, would he? Justice Breyer Yes, Your Honor, he certainly would. I mean, if he can – Judge Maldonado So let me make sure I understand your position. Your position is that if anyone, for whatever purpose whatsoever, for any instant in time holds a gun, at that point they possess a gun? Justice Breyer That's overbroad, Your Honor. There are certainly – Judge Maldonado Okay. Then tell me where, if it's overbroad, tell me where the distinction lies. Justice Breyer If the person – if somebody throws it to them and they involuntarily catch it, if they're not aware it's a gun, if somebody, you know, sets it on them while they're not conscious or something like that. But if they take a gun in their hands on purpose and they're holding it – Judge Maldonado Is this a rule, a special rule for guns? Justice Breyer Yes, Your Honor. If I could just – Judge Maldonado Why is there a special rule for – because it's not true about drugs. We know there are drug laws, not that. Justice Breyer That's correct. And if I could just read from Johnson briefly, Your Honor. The statute explicitly punishes possession, not retention, and thus in no way invites investigation into why the defendant possessed the firearm or for how long it lasted. Judge Maldonado But that's true. Johnson was something else. Johnson was an innocent possession defense. I mean, he – that guy had the gun in his house for quite a while. He was holding it for quite a while and he carried it someplace and so on. That was a – that was not about whether just picking up a gun is possession. Justice Breyer It wasn't, Your Honor, but the – it specifically says that the statute does not invite – does not invite any investigation into why the defendant possessed the firearm or for how long that possession lasted. Judge Maldonado But wait a minute. Didn't you just tell – didn't you just tell me a minute ago that if I threw a gun at you and you, without any intent, just, you know, your arms were out and you caught the gun, that that would not be possession or control under the statute? Justice Breyer Yes, Your Honor, and this is what Johnson said. Judge Maldonado So doesn't it turn on, at least in part, on knowledge and intent? Justice Breyer Your Honor, this is – Judge Maldonado Even under this statute. Justice Breyer This is what – this is what the – Johnson is about and it discusses, you know, whether you do it involuntarily, then that's – that's a different story. But that's – there's no issue on that here. There's no doubt that, you know, he never – Judge Maldonado If I – if the gun is thrown at me and I grab it, at that point, under your previous definition, I have control over it, do I not? Even if it was involuntarily that I – that it was thrown at me. But you just told me that that would not be a violation of this statute, so there has to be some mental aspect of this, or at least contextual aspect, in defining possession and dominion and control, yes? Justice Breyer Your Honor, the – the Johnson case is all about – it talks about a very narrow exception, which is involuntary, and it – but it – it also specifically says – when you're talking about voluntary or involuntary, it's not a question of how long. It's – Judge Maldonado Can you tell me why drugs are different than guns? I mean, you agree that our law about drugs is directly the contrary of this, or what you're arguing for. Justice Breyer Your Honor, I – once again, if I could read a different portion of Johnson – Judge Maldonado No, no, I want you to tell me, not from words out of Johnson, because Johnson's about something else. I want you to tell me why drugs are different than guns. Does Johnson address why drugs are different than guns? Justice Breyer It doesn't address drugs. Judge Maldonado Right, so why are drugs different than guns? Justice Breyer Well, the statutory scheme, the 922G scheme, it imposes something that is – I'm sorry, I'm not going to read it – but something approaching absolute liability. That's what – Judge Maldonado So in other words, the word possession in the drug statute means something different than the word possession in the gun statute. Justice Breyer Yes, Your Honor. Judge Maldonado Why? Justice Breyer I'm not sure – Judge Maldonado Where do you get that from? I mean, from whence do you get that conclusion? Justice Breyer It's in the statute itself. What is required to be shown in the statute is that the person is a felon, that they possess the gun, that they – Judge Maldonado Okay, and what about with regard to drugs? Justice Breyer I'm just not sure, Your Honor. I'm not familiar with the cases.  I'm not up on the cases. Judge Maldonado There are cases that say if you go and you put your hands in the bag of drugs to see what kind of drugs it is, that is not possession, even if it's going through your hands. Justice Breyer Your Honor, the court has interpreted this – Judge Maldonado Don't we need to have some coherence? I mean, don't we need to have some way to explain? I mean, Lane did address this. It sounds like you haven't really read the case law. I mean, Lane addressed it. It has a theory about why guns are different than drugs. The question is, should we – is that a coherent theory? Should we adopt it? Justice Breyer Your Honor, is that the D.C. Circuit case that you're – Judge Maldonado No, it's not. It's, I think, a Seventh Circuit case. Yeah. Justice Breyer Your Honor, I apologize. Judge Maldonado You really came up here and you haven't read the case law? Justice Breyer Your Honor, I haven't read the cases that – Judge Maldonado Okay. that neither party cited in their briefing. Justice O'Connor I mean, you know, we don't necessarily have arguments for no reason. And here there is an interesting kind of legal issue, as we've been trying to explain to both of you, which is not simply about this case. All right. What about the law of the case problem? I mean, I – it seems to me that he said, in the earlier opinion, that the final conclusion was that the – didn't have the power and intent to exercise control over a Hayborn semi-automatic weapon. You agree that in order to have possession, you do have to have power and intent to exercise control? Justice Breyer Your Honor, you have to have control of the weapon. I mean, to have actual possession, you have to be controlling it. Justice O'Connor Right. And which you said means dominion and control. Justice Breyer Right. Justice O'Connor All right. So that's different than power and intent to exercise control? Justice Breyer Yes, Your Honor. The power and intent to exercise control, that goes to constructive possession. And it's – Justice O'Connor And why should you have a different intent for actual than for constructive possession? Justice Breyer I think that the standard is lower when you actually have the weapon. The court doesn't – I mean, with constructive possession, it sort of invites an inquiry  Justice O'Connor But what you have to have the power and intent to do is to exercise control. So if exercising control is possessing it, holding it, then all you have to do is have the power and intent to hold it. So since that guy did hold it, we must have been awful dumb to have said this, if it's not the law of the case. Justice Breyer Your Honor, I don't think the court is dumb, but I think the district court was correct that the court didn't address the actual possession issue. The power and intent to exercise control, right, means the power and intent, you're saying, to hold it for 30 seconds. Justice Breyer Well, the power and intent to exercise control, that is a circumstantial – that comes up when the court is addressing circumstantial evidence. Justice O'Connor But control means the same thing in both circumstances, right? Justice Breyer Right, but when we're talking about – when we're talking about constructive possession, by definition, there's no actual possession. And so we're talking about, when we get into constructive possession, and then we get into power and intent to control, and that whole issue that the court addressed, and when we're talking about – Justice O'Connor Explain to me how it could be that if he held this in his hands for 30 seconds, he didn't have the power and intent to exercise control of it. Justice Breyer Your Honor, I don't know. I think that when the court made that statement in its prior opinion, I think the district court correctly interpreted that to mean – correctly interpreted that statement in the context of constructive possession and not in the context of actual possession.  Justice O'Connor And so we shouldn't have reversed the conviction at all. We just were mistaken. Justice Breyer I mean, the – I think the court – the court in its prior opinion – Justice O'Connor You have to be saying that. If you don't answer yes – I mean, the only possibility is the one that Judge Watford has been suggesting, which is that you didn't argue it to us, so therefore we were entitled to make a mistake. Justice Breyer Your Honor, I think that the – I mean, we didn't appeal the court's decision before, but I think that the district court is correct that this issue, this actual – whether he showed actual possession, whether we showed actual possession was not addressed in the prior opinion. Justice Breyer Can I ask you one last question just on the magazine issue? Justice Breyer Certainly, Your Honor. Justice Breyer Because you're now way over your time. Justice Breyer Your theory is that we're supposed to look at those pictures and be able to tell that the rifle itself can accept those magazines? How would we know that without – Justice Breyer Not exactly – Justice Breyer Without some testimony? Justice Breyer Not exactly, Your Honor. My theory is that the district court was the fact finder, and the district court was able to look at those pictures, and the district court was able to make a determination – Justice Breyer How? I'm looking at the same exact picture, and I frankly can't tell for the life of me whether that magazine can be accepted in that rifle. So how would the district court – how is the district court better situated than I am to figure that out? Justice Breyer The district court is a finder of fact. He looked at the pictures as they came in at trial – Justice Breyer He has better perceptive abilities to figure out whether that thing goes in than I do? Is that what you're saying? Justice Breyer Your Honor, he – Justice Breyer Maybe he does. I don't know, but – Justice Breyer I mean, the court's perceptive ability – I don't – Justice Breyer So there's no testimony from anyone from the trial that ever said, oh, yes, and after we discovered this rifle, that we figured out that it could accept the magazine. There's nothing like that. There's testimony that says, this is how we found the gun. There's testimony that – there's the pictures themselves. But I think the key thing for that is that this court is determining whether or not the district court committed clear error. And without evidence – Justice O'Connor What, did he make a finding? Justice Breyer Excuse me, what? Justice O'Connor Did he ever make a finding? Justice Breyer Your Honor – Justice O'Connor I thought he thought it wasn't part of what was before him because he thought it wasn't part of the remand. Justice Breyer Your Honor, I acknowledge that it was not clear. But I think we laid out in our brief that – I mean, he did make the statement. I assume he didn't make it for the party's entertainment. You know, he said that he recalled this evidence that there was – the gun was found with a large – Justice O'Connor But he also made the statement that the issue wasn't for him. And he didn't make that one for the party's entertainment either. Justice Breyer I'm aware – I concede that it's not particularly clear, Your Honor. I wish it were more clear. Justice O'Connor Thank you very much. Justice Breyer As I have in many cases. Justice O'Connor We'll give you two minutes.  Man, let me ask you this. Is there not a distinction that can be made along the lines of the Seventh Circuit's case in Lane between what Congress had in mind with respect to possession of drugs and what they had in mind with respect to possession of guns? With drugs, they were concerned with the ability to further distribute the drugs, or at least the intent to distribute. With guns, they were just concerned with the dangerousness of having a convicted felon anywhere in control of a gun because of what might happen. So isn't there at least a potential distinction in how broadly or narrowly we should define possession in those two different situations? Justice O'Connor Well, I think there's definitely an argument to be made talking about the difference between drugs and guns. But I think when we're talking about the element of possession, it's still the same legal element. Did someone actually have dominion or control over that item, whether it's drugs or guns? And I understand that Congress may have had... So, in some trivial, when your client held the gun, in some at least trivial sense, he had control of the gun, yes? Nothing stopped him at that moment from turning around and shooting the guard and then escaping through a tunnel or something like that, right? I mean, he had, at least in a very immediate sense, control. Justice O'Connor First of all, I respectfully disagree. As the facts are related, first of all, it's our understanding that at the time that he was looking at the gun, there was actually a cable walk through the gun, making it... Justice O'Connor It's not as clear as I would like it to be, but I think that it was pretty clear from Ms. Hayborn's testimony indicating that there was a cable walk through it. In addition... Justice O'Connor She said that at the time she handed it to  Justice O'Connor No, and it's not clear. And I think that goes to the guideline argument also about the, at the time of the offense, if we are going to say today that he actually possessed it or he constructively possessed it, then at the time of the offense, were those magazines there as well? And that's completely void of any sort of indication whatsoever, and the government has failed to present that as well. But going back to your question, I think the dominion and control issue is really what helps you understand it, and it's the dominion that here is a person, Ms. Hayborn, who owned the weapon, had the keys to the weapon, had the keys to the lock for the weapon, and briefly shows it to him, and then he gives it back. Who had dominion over that? It's Ms. Hayborn. Not... Justice O'Connor And when he gives it back, she then puts it back in the case and relocks the case. Justice O'Connor Correct. Is that what the evidence says? Justice O'Connor Absolutely. Justice O'Connor What, I mean, could, I mean, aside from holding like the Seventh Circuit, that is, just automatically, legally, as a matter of law possession, could the district court, if we send it back yet again, conclude from the context here that it was that piece of it, and leaving aside the law of the case from them, that that was possession because after all, it was his girlfriend, it was in a house that they shared, was it? Justice O'Connor Well, first of all, there is no indication where that gun was actually showed. All we know is that there was a time and place where Ms. Hayborn actually presented it to Mr. Combs, and he looked at it and put it back into the case. So I'm not sure where it was when you say it was at the house. I don't think it's clear where that actually occurred. But... Justice O'Connor Well, I don't think it's clear he actually knew where the gun was after that. I think there was a moment in time he knew right where the gun was. He looked at the gun. But after that, I don't think it, I think the evidence says otherwise. Justice O'Connor And do you know, I mean, in Lane, even though they announced what seemed to be a blanket rule, he actually had paid for the gun. He owned the gun at that point, even though he claimed to own it on behalf of somebody else. What about in the other cases? Was there any case where there was nothing but just holding the gun? Justice O'Connor There was, I believe, Castillo, which they saw him possessing the gun for a matter of minutes. And when they walked up on him, he threw it to, I think, under his jacket at the time. But I think, you know, in every case that I've looked at, always the actual possession issue has always been incorporated with someone actually seeing him possess it at the time of the arrest, or that it being in close proximity to him for the constructive possession. I don't think with him touching it, I mean, the question is, is if he put a fingerprint on it at some point in time, five years- Justice O'Connor Please let go of the fingerprint, why not? Justice O'Connor Fair enough. So, but I mean, that's the thing is, yes, there was a point in time that Mr. Combs touched the weapon. But I don't think that rises to a level to demonstrate dominion and control. Justice O'Connor Okay, thank you very much for your arguments. And we are adjourned.
judges: Rakoff, Berzon, Watford